## READING CITY DEVELOPMENT AUTHORITY,

v.

## William C. LUCABAUGH, Jr., Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 6, 2003.

Decided July 28, 2003.

---

William C. Lucabaugh, Jr., appellant, pro se.

Francis M. Mulligan, Reading, for appellee.

Before COLINS, President Judge, FRIEDMAN, J., and FLAHERTY, Senior Judge.

OPINION BY President Judge COLINS.

William C. Lucabaugh, Jr., (Condemnee), representing himself before this Court, appeals from an order of the Court of Common Pleas of Berks County denying his "Post-trial Motion for New Trial," through which he sought to challenge a molded verdict awarded in his favor, and against the condemnor, Redevelopment Authority of the City of Reading (Authority), in the amount of $49,000.00.

As noted by the trial court in its opinion written in support of judgment, the Authority filed a declaration of taking on September 14, 1992 pursuant to Section 12.1 of the Urban Redevelopment Law, Act of May 24, 1945, P.L. 991, 35 P.S. § 1712.1, *as amended,* added by Section 2 of the Act of June 23, 1978, P.L. 556, *as amended.* Condemnee filed preliminary objections to the condemnation action, which were dismissed by the trial court. Condemnee appealed that decision to this Court, which affirmed the trial court's dismissal.[1] In accordance with Section 502 of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–502, the Authority petitioned the trial court for a Board of View to determine the damages to which Condemnee is entitled for the condemnation of his property. The Board was appointed on April 16, 2001. The Board of View concluded that Condemnee was entitled to $54,000 in damages plus $500 for attorney and engineering fees.

Condemnee appealed the Board of View's decision pursuant to Section 515 of the Code, 26 P.S. § 1–515, and requested a jury trial as allowed by Section 516 of the Code, 26 P.S. § 1–516. The trial court proceeded to conduct a hearing before a jury. A jury found in favor of Condemnee in the amount of $49,000. Condemnee filed a post-trial motion requesting a new trial, which the trial Court denied on November 21, 2002. The trial Court noted the evidence upon which the jury relied in reaching its verdict, specifically the testimony of Thomas J. Bellairs, a certified general real estate appraiser, who used market data from within the City of Reading to determine a range of value per square foot of comparable properties. Ultimately, Mr. Bellairs appraised the property at $5.50 per square foot, for a total of $49,000. Additionally, the Authority offered evidence that Condemnee paid $40,000.00 for the property in 1989. In response to that evidence, Condmnee offered only his own opinion that the property was worth $1.2 million.

Before this Court, Condemnee raises thirteen questions for review. All but one

---

1. In an unpublished opinion, this Court rejected Condemnee's challenges to the condemnation proceeding, including arguments that the proceedings were "faulty," that the proceedings were not "timely prosecuted," and that the Authority had no basis to condemn the property. The Court also rejected Condemnee's argument that the proceedings, by precluding him from proceeding with a sale of the subject property, prevented him from obtaining fair value for his property. This Court rejected the preliminary objections, noting that Condemnee would have an opportunity to establish such fair value before a board of viewers. *Condemnation of Premises, 200 North Fourth Street,* (Pa.Cmwlth., No. 39 C.D.1997, filed July 17, 1997).

of these relate to Condemnee's assertion that his due process rights were violated during the proceedings before the trial court. The remaining allegation of error concerns Condemnee's request to the trial court for factual findings and conclusions of law pertaining to several motions he filed shortly before the jury trial on damages began.

The specific due process complaints are: (1) inadequate notice, (2) lack of a meaningful hearing, (3) failure to provide Condemnee with notice of "rights sua sponte," (4) failure to provide a meaningful hearing for Condemnee's new matter, (5) failure to provide a meaningful hearing for Condemnee's request for admissions, (6) failure to provide a meaningful hearing for Condemnee's "omnibus motion to protect owner's rights," (7) violation of procedural due process for proceeding in violation of a stay on appeal, (8) violation of procedural due process for proceeding in violation of 11 U.S.C. § 362, relating to automatic stays, (9) violation of procedural due process for proceeding without jurisdiction, (10) violation of procedural due process for proceeding without jurisdiction, thereby "tainting" the jury, (11) violation of procedural due process for proceeding without jurisdiction and ordering a jury trial, and (12) violation of procedural due process for pervasive fundamental error throughout the proceedings.

■ In reviewing a trial court's decision on a party's post-trial motions, this Court may disturb the trial court's rulings only if the trial court "manifestly abused its discretion or committed an error of law that affected the outcome of the case." *Tedesco v. Municipal Authority of Hazle Township*, 799 A.2d 931, 934 (Pa.Cmwlth.2002), *petition for allowance of appeal denied*, —— Pa. ——, 820 A.2d 706 (2003). Condemnee makes no argument that there was insufficient evidence to support the jury's award.

■ Condemnee asserts that the trial court violated his due process rights by failing to serve him with notice of a pre-trial settlement conference. The record includes a copy of the order setting the date for the pre-trial conference. Attached to the order is an envelope with a postal stamp indicating that receipt of the letter containing the order was refused. For this reason we reject Condemnee's notice argument. Additionally, we note that Condemnee has pointed to no specific rights adversely affected by the outcome of the pre-trial conference.

Condemnee's argument Number 3 questions whether "new proceedings be granted for failure to notice Appellant of rights sua sponte." Condemnee states that "the record shows no single instance of the trial court 'notifying,' 'sua sponte,' [Condemnee] 'of any violation of rights under the Common Law ... prior to [Condemnee's] 'loosing such rights,' in order to protect'[sic] [Condemnee's] 'rights from any source,'...." However, Condemnee has cited no specific legal authority in support of this claim, making this argument difficult to comprehend. Also, he points to no specific outcome-affecting aspect of the trial court's action or inaction. Accordingly, we reject this argument.

■ Condemnee argues that his due process rights were violated by virtue of the trial court's failure to provide a hearing on his "new matter." In this case, Condemnee filed a document captioned as "new matter" on July 8, 2002, approximately two weeks before the jury trial was scheduled to begin. The "new matter" requested the court to direct the Authority to deliver to Condemnee any personal property that remained in the condemned building. The trial court never addressed Condemnee's request, perhaps because the

request was beyond any relief the court could provide in the case before it, because the sole issue in an appeal of a Board of View decision is the damages due for the condemnation. Although the trial court could have issued an order indicating that it could issue no such relief, Condemnee has not established that the trial court's decision not to act upon Condemnee's request affected the outcome in this case. We conclude that the trial court's treatment of Condemnee's late-filed motion does not constitute an error of law, and is beyond our limited scope of review in this matter.

■ Condemnee also argues that he is entitled to a new trial because the trial court did not provide a hearing on his "requests for admissions" and "omnibus motion to protect owner's rights." As with his "new matter," Condemnee did not file these documents until July 8, 2002, only two weeks before trial was to begin. The Authority filed objections to these documents, noting the lateness of filing, and additionally noting that the matters raised in the documents bore little relationship to the issue of damages before the trial court. The trial court, in apparent response to Condemnee's filings, issued an order refusing to sign a proposed order submitted by Condemnee, indicating that the court regarded the order as an insult to the judiciary.

For the reasons stated above in the discussion of Condemnee's "new matter," we conclude that the trial court committed no error of law that affected the outcome of the case by not conducting a hearing on theses matters. An examination of Condemnee's request for admissions reveals a document seeking admissions to facts that have no bearing on the issue of the damages to which Condemnee is entitled. The scope of the request concerned the alleged vacancy of the condemned building, the manner of condemnation, the motive for condemnation, alleged remote damages unrelated to the value of the condemned property, changes made to the condemned property by a subsequent owner, personal property left in the building, and other matters, some of which would require legal opinion rather than admission of fact. Not one of these issues was pertinent to the discrete issue of damages before the trial court.

Similarly, Condemnee's "omnibus motion" sought an order of the trial court to the effect that his rights would "not be further violated in any proceeding before" the trial court. As part of his motion, Condemnee asserted that "[Condemnee] believes that ... [the] Authority, until the jury decides otherwise is obligated to pay [Condemnee] the Board of View award." Paragraph 4. Condemnee's motion also appeared to assert federal civil rights claims against the Authority. Again, Condemnee filed this motion shortly before the jury trial was to begin, and the relief he sought did not relate to the immediate issue of the amount of damages to which he was entitled **in his appeal from the decision of the Board of View.** Condemnee cited no authority for the proposition that he was entitled to obtain the Board of Viewer's award while awaiting the jury's decision. The issues he raised were beyond the purpose and scope of the proceedings.

■ Condemnee also asserts that he is entitled to a new trial because the trial court allegedly violated his due process rights by electing not to issue factual findings and conclusions of law in response to his new matter, omnibus motion, and request for admissions, as he demanded in his "assertion of rights." However, trial courts are not typically required to support orders on such actions with factual findings and conclusions of law. When a

party makes proper objection to a ruling encompassed in an order, and preserves the objection for appellate purposes, no due process rights have been violated. The trial court's action in this regard did not affect the outcome in the case, and we discern no reversible error.

■ Condemnee's remaining issues pertain to the impact of the bankruptcy proceeding he initiated, relying upon the import of the automatic stay provisions of the federal Bankruptcy Code to argue that the trial court violated his due process rights by proceeding to jury selection before the Authority obtained a federal court order lifting the automatic stay. Condemnee's argument proceeds that, even though the federal bankruptcy court lifted the stay, **before the jury trial began,** the proceedings were tainted because the jury was selected at a time when the trial court had no power to act. Condemnee raises jurisdictional grounds, as well.

■ As noted by the trial court, the federal bankruptcy court **vacated** the automatic stay that had been entered by virtue of Condemnee's bankruptcy filing. As a general rule, when a court vacates a previously entered order, the legal status of a case is the same as if the order never existed. *United States v. Jerry,* 487 F.2d 600 (3d Cir.1973). Thus, Condemnee can claim no rights accruing from the order. In this case, because the order was a nullity from the outset, the trial court had the authority to proceed to jury selection, and we glean no merit to Condemnee's arguments arising from actions the trial court took following the entry of the vacated stay order.

■ The final argument Condemnee makes is that he is entitled to new proceedings because "fundamental error pervaded the proceedings." The key alleged error to which he points is that several judges handled various orders and aspects of the case, and that he "doubts that any of said judges could claim 'to have knowledge' of the case, except by reputation, and suggests the judicial diversity may be an attempt to spread culpability." However unusual the number of judicial officers involved in this case may be, it is not unusual for more than one judicial officer to be involved with various proceedings in a case. Judges are presumed to be aware of the history of a case, and in this case there is no indication that the judges who were involved had insufficient knowledge of the case. Accordingly, we reject this argument.

■ As noted above, the sole issue in the proceeding before the trial court was the damages to which Condemnee is entitled. The jury found the Authority's evidence more credible than Condemnee's, and the evidence is sufficient to support the award. Accordingly, we find no error in the trial court's decision denying Condemnee's post-trial motions, and that court's decision is affirmed.[2]

2. Condemnee has also filed documents in this Court similar to ones he filed with the trial court, captioned "Appellant's Demand for Rights Sua Sponte" and "Appellant's Assertion of Rights." These documents make reference to the fact that Condemnee is representing himself, and essentially request a right to assistance from this Court based upon his representation of himself. As we noted in our previous decision, "a party choosing to represent itself in a legal proceeding must, to some reasonable extent, assume the risk that its lack of expertise and legal training will prove its undoing." *Condemnation of Premises, 200 North Fourth Street,* (Pa.Cmwlth., 39 C.D. 1997, filed July 17, 1997), p. 4. As this Court noted there, a party representing himself cannot expect an appellate court to help him present or develop his case. *Id.* Accordingly, to the extent those documents constitute a formal pleading, they are denied.

## ORDER

AND NOW, this 28th day of July 2003, the order of the Court of Common Pleas of Berks County denying Lucabaugh's post-trial motion is affirmed.